IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | BK No. 18-bk-04603 |
| CHRISTOPHER THOMAS HUGHES, ) | Chapter 11 |
| PATRICIA JEAN HUGHES, ) | Judge Mashburn |
| ) | |
| Debtors. ) | |

**DEBTORS' FIRST AMENDED AND RESTATED CHAPTER 11 PLAN
OF REORGANIZATION DATED APRIL 1, 2019**

ARTICLE I
SUMMARY

1.01 This Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan") proposes to pay the creditors of Christopher T. Hughes and Patricia J. Hughes (the "Debtors") as set forth herein.

1.02 This Plan provides for eight (8) classes of secured claims; one (1) class of unsecured claims; and one (1) class of equity interests of the Debtors. Unsecured creditors holding allowed claims will receive pro rata distributions from Disposable Income, and the liquidation of the Debtors' Property, further described herein. This Plan also provides for the payment of administrative and priority claims.

1.03 All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides additional information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

1.04 The amendments within this filing dated March 25, 2019 include the following:

    1.04.1 The treatment provided to Seedway, LLC was modified.
    1.04.2 The means for execution of the Plan, including the order of liquidation of Real Property was clarified.

ARTICLE II
DEFINITIONS

Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

a. "Adequate Protection Payments" shall mean payments made by the Debtors to creditors holding claims secured by Property of the Debtors, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

b. "Administrative Claim" shall mean any claim including, but not limited to, claims for compensation of professionals made pursuant to § 330 of the Bankruptcy Code and claims entitled to administrative priority pursuant to §§ 507(a)(1) and 503(b) of the Bankruptcy Code. Fees due to the United States Trustee pursuant to 28 U.S.C. § 1930 shall also be included in this definition.

c. "Allowed Claim" shall mean a Claim that is evidenced by a proof of claim that has been filed under § 501 or deemed filed under § 1111(a), and any timely filed objection has been resolved by a final non-appealable order. The amount of any Claim shall be reduced by any post-petition payments made to the creditor prior to the Effective Date. As used herein, Allowed Claim shall include claims against property of the estate that may be allowed as secured under § 506 of the Bankruptcy Code.

d. "Allowed Secured Claim" shall mean a Secured Claim in an amount equal to the lesser of (i) the value of the Property securing the Allowed Claim set under the Plan or otherwise determined by the Court at Confirmation, or (ii) the amount of the Allowed Claim plus post-petition interest and fees accrued from the Petition Date until the Effective Date as allowed under § 506(b).

e. "Allowed Unsecured Claim" shall mean an Allowed Claim that is not otherwise an Allowed Secured Claim or an Allowed Claim entitled to priority under § 507 of the Bankruptcy Code.

f. "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq*.

g. "Chapter 11" shall mean Chapter 11 of the Bankruptcy Code.

h. "Claim" shall mean a claim against the Debtors as defined in § 101(5) of the Bankruptcy Code.

i. "Claimant" shall mean any creditor or party in interest.

j. "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

k. "Confirmation Hearing" shall mean the hearing on the confirmation of the Plan.

l. "Court" shall mean the United States Bankruptcy Court for the Middle District of Tennessee and the Judge assigned to this case.

m. "Debtors" shall mean Christopher T. Hughes and Patricia J. Hughes with the status of and rights conferred to Debtors-in-possession by § 1107 of the Bankruptcy Code.

n. "Disposable Income" shall mean all surplus income after the payment of living expenses of the Debtors.

o. "Effective Date" shall mean the later of (i) the first business day of the first full month following Confirmation, or (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable. For purposes of the calculations and disbursements proposed within this Plan, an Effective Date of June 1, 2019 is presumed. However, the Debtors may at any time designate an earlier Effective Date by filing written notice thereof with the Court and serving such notice on all creditors and parties in interest.

p. "Interests" shall mean the ownership interests held by the Debtors in Property.

q. "Marketing Period" shall mean the eighteen (18) month period following the Effective Date. If at the conclusion of the Marketing Period, the Debtors have a bona fide offer for the purchase and sale of any Real Property, the Debtors shall be entitled to extend the marketing Period for 90 days in order to close such sale(s).

r. "Petition Date" shall mean July 11, 2018.

s. "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

t. "Plan Payments" shall mean all funds remitted by the Debtors, the Reorganized Debtors, and/or third parties on behalf of the Debtors or Reorganized Debtors to be distributed pursuant to the Plan.

u. "Property" shall mean all assets in which the Debtors have an interest as of the Effective Date, to the extent of the Debtors' interest, plus, unless otherwise stated herein, assets acquired after the Petition Date.

v. "Reorganized Debtors" shall mean the Debtors after Confirmation.

w. "Secured Claim" shall mean an Allowed Claim that is allowed as a secured claim pursuant to § 506(a). If a value fixed by this Plan is not approved by the Court at Confirmation, the Plan will apply the value determined by the Court to be appropriate.

## ARTICLE III
### CLASSIFICATION OF CLAIMS AND INTERESTS

3.01 <u>Class 1</u>. This class shall consist of the Allowed Secured Claim of First Bank.

3.02 <u>Class 2</u>. This class shall consist of the Allowed Secured Claim of Farm Credit Mid-America, FLCA ("Farm Credit").

3.03    Class 3.  This class shall consist of the Allowed Secured Claim of Peoples Bank & Trust Company ("Peoples B&T").

3.04    Class 4.  This class shall consist of the Allowed Secured Claim of the Seedway, LLC.

3.05    Class 5.  This class shall consist of the Allowed Secured Claim of Nutrien Ag Solutions (f/k/a Crop Production Services, Inc.) ("Nutrien").

3.06    Class 6.  This class shall consist of the Allowed Secured Claim of ProSolutions, LLC.

3.07    Class 7.  This class shall consist of the Allowed Secured Claim of Coface North America Insurance Company assignee of Abbott & Cobb, Inc. ("Coface").

3.08    Class 8.  This class shall consist of the Allowed Secured Claim of Deloy L. Brown Petroleum, LLC ("DLBP").

3.09    Class 9.  This class shall consist of the Unsecured Claims not entitled to priority and not expressly included in the definition of any other class.  This Class includes, without limitation, Claims arising out of the rejection of any executory contract or unexpired lease, each Allowed Claim secured by a lien on Property in which the Debtors have an interest to the extent that such Claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such Claim of the class described in 11 U.S.C. § 507(a), to the extent that the Allowed amount of such Claim exceeds the amount which such Claim may be afforded priority thereunder.

3.10    Class 10.  This class shall consist of the Interests in Property.

**ARTICLE IV**
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND U.S. TRUSTEE FEES

4.01    Unclassified Claims.  Pursuant to § 1123(a)(1), Administrative Claims allowed under §507(a)(2) and priority tax claims under § 507(a)(8) are not in a class.

4.02    Administrative Claims.  Except as otherwise provided under the Plan, each holder of an Administrative Claim allowed under § 503 of the Bankruptcy Code will be paid in full at the later of (i) the time that the expense has been approved by the Court, (ii) upon such other terms as may be agreed upon by the holder of the claim and the Debtors, or (iii) the Effective Date.  All fees paid to professionals for pre-confirmation services must be approved and allowed by the Court.  A final fee application for pre-confirmation fees earned and expenses incurred shall be filed by Niarhos & Waldron, PLC on or before thirty (30) days following Confirmation.

4.03    Priority Tax Claims.  No penalty shall accrue on such priority tax claims after the Petition Date.  The remaining amount of the Allowed Claims of the holders of priority tax claims

shall be discharged upon Confirmation under § 1141. All such tax claims that are incurred after Confirmation shall be payable when due. The priority tax claims shall be paid as follows:

        4.03.1  <u>IRS</u>. The Priority Claim of the IRS allowed under § 507(a)(8) will be paid in full at 6.0% interest as follows: one lump sum payment of $161,000.00 on or before May 1, 2021, and in forty-eight (48) equal monthly installments of principal and interest in the amount of $2,386.14, until the Priority Claim of the IRS is paid in full. Payments to the IRS shall begin on the first business day of the first full month following the Effective Date.

        4.03.2  <u>Tennessee DOL</u>. The Priority Claim of the TN DOL allowed under § 507(a)(8) will be paid in full at 8.75% interest in twenty-four (24) equal monthly installments of principal and interest in the amount of $161.85. Payments to the TN DOL shall begin on the first business day of the first full month following the Effective Date.

        4.03.3  <u>Tennessee DOR</u>. The Priority Claim of the TN DOR allowed under § 507(a)(8) will be paid in full at 8.75% interest in one (1) installment of principal and interest in the amount of $86.40. This amount shall be paid on the first business day of the first full month following the Effective Date.

        4.03.4  <u>Florida DOR</u>. The Priority Claim of the FL DOR allowed under § 507(a)(8) will be paid in full at 9.0% interest in twelve (12) equal monthly installments of principal and interest in the amount of $158.76. Payments to the FL DOR shall begin on the first business day of the first full month following the Effective Date.

    4.04  <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, converted to another chapter of the Bankruptcy Code, or a final decree is entered by the Court.

**ARTICLE V**
TREATMENT OF CLAIMS, LIENS AND INTERESTS UNDER THE PLAN

Claims and Interests shall be treated as follows under the Plan:

| *Class No.* | *Holder of Claim or Interest* | *Plan Treatment* |
|---|---|---|
| 1 | First Bank | The Allowed Secured Claim of First Bank shall be allowed in the amount of $400,983.39, plus the contract rate of interest through the date of sale, as described below, less any Adequate Protection Payments received prior to the Effective Date. First Bank will retain its lien in 161 Riverbend Drive, Crossville, TN and will be paid in full upon the sale of the Riverbend Property.<br><br>Pursuant to the Agreed Order Resolving Motion for Relief from the Automatic Stay [Docket No. 53], the Riverbend Property is currently listed for sale through the services of a professional real |

| | | |
|---|---|---|
| | | estate agent. The Debtors shall continue to market and attempt to sell the Riverbend Property through May 31, 2019. If a contract for sale of the Riverbend Property is obtained prior to May 31, 2019, the Debtors shall have until June 28, 2019 to complete the sale of the property. If a contract for sale of the Riverbend Property without major contingencies is not obtained by May 31, 2019, First Bank shall be granted relief from the automatic stay and may move forward with the foreclosure of the property. Excess proceeds from any arms-length sale or foreclosure sale related to the Riverbend Property shall be paid first to Farm Credit Services (the second lien holder), or pursuant to an agreement of all parties in interest. |
| 2 | Farm Credit Mid- America, FLCA ("Farm Credit") | The Allowed Secured Claim of Farm Credit shall be allowed in the amount of $1,360,641.79, plus the contract rate of interest through the Effective Date, less any Adequate Protection Payments received prior to the Effective Date. Farm Credit will retain its liens in the Real Property, the Farm Equipment, the Crops, and the Seeds (collectively, the "Farm Credit Collateral"). Farm Credit will be paid in full upon the sale of various pieces of the Farm Credit Collateral, beginning with the Riverbend Property and the Overton Property, and continuing at the discretion of the Debtors as described in Article VII(A). Interest will continue to accrue on this claim until it is paid in full. |
| 3 | Peoples Bank & Trust Company ("Peoples Bank") | The Allowed Secured Claim of Peoples Bank shall be allowed in the amount of $511,391.32, plus the contract rate of interest through the Effective Date, less any Adequate Protection Payments received prior to the Effective Date. Peoples Bank will retain its liens in the Overton Property, the Farm Equipment, the Crops, and the Seeds (collectively, the "Peoples Bank Collateral"). Peoples Bank will be paid in full upon the sale of various pieces of the Peoples Bank Collateral, beginning with the Riverbend Property and the Overton Property, and continuing at the discretion of the Debtors as described in Article VII(A). Interest will continue to accrue on this claim until it is paid in full. |
| 4 | Seedway, LLC | The claim of Seedway shall be treated as an unsecured claim in Class 9 because there is no equity in the Real Property above the senior liens. Upon Confirmation, Seedway shall record a release of lien with the appropriate county Register of Deeds or shall provide such a release for the Debtors to file. |
| 5 | Nutrien Ag Solutions (fka Crop | The Allowed Secured Claim of NAS shall be allowed in the amount of $129,644.23, plus 5.5% interest through the Effective Date, less any Adequate Protection Payments received prior to the |

| | | |
|---|---|---|
| | Production Services) ("NAS") | Effective Date. NAS will retain its liens in the Debtors' Real Property until the Allowed Secured Claim is paid in full through the sale of various pieces of the Real Property as described in Article VII(A). Upon receipt of the final payment of the Allowed Secured Claim, NAS shall record a release of lien with the appropriate county Register of Deeds or shall provide such a release for the Debtors to file. Interest will continue to accrue on this claim until the Allowed Secured Claim is paid in full. |
| 6 | ProSolutions, LLC | The claim of ProSolutions shall be treated as an unsecured claim in Class 9 because there is no equity in the Real Property above the senior liens. Upon Confirmation, ProSolutions shall record a release of lien with the appropriate county Register of Deeds or shall provide such a release for the Debtors to file. |
| 7 | Coface North America Insurance Co. ("Coface") | The claim of Coface shall be treated as an unsecured claim in Class 9 because there is no equity in the Real Property above the senior liens. Upon Confirmation, Coface shall record a release of lien with the appropriate county Register of Deeds or shall provide such a release for the Debtors to file. |
| 8 | Deloy L. Brown Petroleum ("DLBP") | The claim of DLBP shall be treated as an unsecured claim in Class 9 because there is no equity in the Real Property above the senior liens. Upon Confirmation, DLBP shall record a release of lien with the appropriate county Register of Deeds or shall provide such a release for the Debtors to file. |
| 9 | All Allowed Unsecured Claims | This class shall consist of the Allowed Unsecured Claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, Claims arising out of the rejection of any executory contact or unexpired lease, each Allowed Claim secured by a lien on property in which the Debtors have an interest to the extent that such Claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such Claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such Claim exceeds the amount which such Claim may be afforded priority thereunder.<br><br>The Plan provides a pool of $500,000.00 to be paid pro-rata to the claimholders in this class. The Debtors shall pay pro-rata payments beginning 90 days after the end of the Marketing Period. The Debtors have discretion in making the payments to unsecured creditors with either farming revenues or through the liquidation of additional assets of the Debtors. |

| 10 | Debtors | The Debtors will retain all ownership rights in Property. |

*In the event any of the Claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is secured, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Plan.*

*The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtors' schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).*

## ARTICLE VI
## MEANS FOR EXECUTION OF THE PLAN

6.01 <u>Sale of the Riverbend Property</u>. The Debtors hired a professional real estate agent to sell their personal residence. It is currently listed for sale in the amount of $975,000.00. As fully described in Article V, above, any proceeds of the sale of the Riverbend Property above the secured claim of First Bank, shall be paid to the second lien holder, Farm Credit, or pursuant to an agreement of all parties in interest.

6.02 <u>Sale of the Overton Property</u>. On or before the Effective Date, the Debtors will list the Overton Property with a professional real estate agent. The tax assessor's value of the Overton Property is $900,900.00. The Debtors shall continue to market and attempt to sell the Overton Property through the Marketing Period. If a contract for sale of the Overton Property is obtained prior to the expiration of the Marketing Period, the Debtors shall have an additional 90 days to complete the sale of the Overton Property. If at the conclusion of the Marketing Period the Overton Property remains unsold, it shall be sold by auction. Any such action shall take place as soon as practicable following the conclusion of the Marketing Period and shall be conducted by a reputable auction company. When the Overton Property is sold, the sales proceeds shall be applied first to reasonable sale expenses, then to payment of secured claims in order of priority. Any remaining funds shall be used to fund the Plan. Notwithstanding anything to the contrary, the Debtors shall be entitled to auction the Overton Property at any time during the Marketing Period.

6.03 <u>Funding the Plan after the Sale of the Riverbend Property and the Overton Property</u>. The remainder of the funds for the Plan shall be paid through farming revenues, if available. If such payments cannot be accomplished through farming revenues, the Debtors are prepared to liquidate additional real estate, and non-essential farming equipment, and vehicles to satisfy the financial requirements of the Plan. The marketing and sale of these additional assets will depend on the farming revenues during the Marketing Period and the sales prices of the Overton Property and the Riverbend Property. If the payment of claims under the Plan cannot be satisfied through other revenues, the following properties will be sold at the following times:

| *Property Address* | *Sale or Auction Date* |
|---|---|
| 1705 Old Hwy 70, Crossville, TN | 3 months following the Marketing Period (provided that $72,000.00 of cash disbursements is not made under the Plan beforehand) |

| 180 Cox Ave., Crossville, TN | 5 months following the Marketing Period (provided that $144,000.00 of cash disbursements is not made under the Plan beforehand) |
| --- | --- |
| 481 George Smith Rd., Crossville, TN | 7 months following the Marketing Period (provided that $216,000.00 of cash disbursements is not made under the Plan beforehand) |
| 39 Iuka Ln., Crossville, TN | 9 months following the Marketing Period (provided that $288,000.00 of cash disbursements is not made under the Plan beforehand) |
| 307 POW Camp Rd., Crossville, TN | 11 months following the Marketing Period (provided that $360,000.00 of cash disbursements is not made under the Plan beforehand) |
| 60 Sunset Ridge Dr., Crossville, TN | 12 months following the Marketing Period (provided that $432,000.00 of cash disbursements is not made under the Plan beforehand) |
| 1621 Old Hwy 70, Crossville, TN | 12 months following the Marketing Period (provided that $500,000.00 of cash disbursements is not made under the Plan beforehand) |

The Debtors will have the option to either pay the amount listed above (through farming revenues) or allow the properties to be sold or auctioned at the times indicated above. The Debtors reserve the right to liquidate any of these properties, or other collateral, before the proposed liquidation dates above.

6.04 <u>Distribution on Allowed Claims</u>. Distributions hereunder will be made only on Allowed Claims.

6.05 <u>Early Payment</u>. Nothing herein shall prohibit the Reorganized Debtors from making an early payment of an Allowed Secured Claim, provided the funds used to pay that Claim will not cause a reduction of the distributions to the Unsecured Claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtors to wait the proposed length of the Plan to satisfy all Plan Payments, and the Reorganized Debtors shall not be prohibited from making an early payment of the guaranteed amount to Class 9 Claims, provided that the Debtors are current on payments to Class 1 through Class 5 Claims.

6.06 <u>Settlement of Disputed Claims</u>. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

6.07    Determination of Interest Rate.  If any interest rate fixed under this Plan is not approved by the Court, the applicable rate under the Plan shall be the rate determined to be allowable by the Court.

6.08    Discharge of Debts and Discharge Injunction.  For the purposes of 11 U.S.C. § 1141(d)(5), the Debtors will have completed their obligations under the Plan if they are not in default under the Plan as of the date of the final payment to the Class 9 Claims.  As of that time, the Debtors will be entitled to obtain a discharge pursuant to 11 U.S.C. § 1141(d)(5) and shall be entitled to the permanent protection afforded by 11 U.S.C. § 524 upon the Court's entry of the Order of Discharge.

6.09    Retention of Property.  Until the case is closed, the Debtors will continue to remain in possession of all Property and shall continue to pay U.S. Trustee fees as required.

6.10    Voiding of Liens.  Except as otherwise provided under the Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claims.

6.11    Transfer of Assets.  As of the Effective Date and except as otherwise provided herein, all Property of the Debtors will be retained by the Reorganized Debtors free and clear of all claims.

6.12    Default Under Plan.  Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any Claim after Confirmation shall exist only if the Debtors (i) fail to make monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fail to insure the Property securing the creditor's Claim for the value of the Property, or (iii) dispose of the Property securing the Claim, normal wear and tear excepted, without either the consent of the creditor holding the Claim, the satisfaction of the lien on that Property, or the payment of the net proceeds to that creditor.

6.13    Notice. Unless otherwise directed by the Debtors in writing, notice of default shall be sufficient if delivered as follows:

>   Christopher and Patricia Hughes
>   P.O. Box 2573
>   Crossville, TN 38557
>   (or such alternative address is designated by the Debtors and mailed to all Claimants)

With copy to:    Gray Waldron
NIARHOS & WALDRON, PLC
1106 18th Avenue South
Nashville, Tennessee 37212
gray@niarhos.com

# ARTICLE VII
## OBJECTIONS TO CLAIMS

The Debtors or any party in interest may file an objection to any Claim in any class on or before the Effective Date. Objections not filed within such time will be deemed waived. If a claim is disputed, no payments or distributions are required to be paid with respect to all or any portion of the disputed Claim unless and until such Claim becomes an Allowed Claim as determined by an order of the Court. If any Claim or portion thereof is challenged by an objection or otherwise, distribution may, in the Debtors' sole discretion, be made on any portion of such disputed Claim which is undisputed, pending resolution of the Claim allowance as a whole.

# ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors are party to various leases as follows:

1. Approximately 10 acres of farm land lease from Curtis Whittenburg;
2. "Preachers Farm" land lease from Denny Moore, Sr.;
3. Approximately 20 acres of farm land lease from Greg Nicholas;
4. Approximately 20 acres of farm land lease from James R. Niles;
5. Approximately 32 acres of farm land lease from James Smith;
6. Farm land lease from Jeff Proffitt;
7. "Wildwood" farm land lease from John Cannon;
8. Approximately 160 acres of farm land lease from Robert and Susan Denton;
9. "Colquitt Farm" land lease from The Rock Yard;
10. Farm land lease from Tommy Norod;
11. Farm land lease from XI Properties; and
12. Lease of Florida residence from The Quaye at Wellington.

The Debtors will assume the executory contracts pursuant to the original terms of these contracts. To the extent there are any additional executory contracts or unexpired leases of the Debtors, the Debtors hereby specifically reject those contracts retroactively to the Petition Date. Regarding the assumed leases detailed in the Debtors' statements and schedules, the Debtors have maintained payments and do not anticipate a need for payments to cure any defaults. Any creditors that believe they hold claims in regards to contracts rejected hereunder shall file a proof of claim on or before June 1, 2019. Any such timely filed Allowed Claims will participate in the distribution for unsecured creditors set out within the Plan.

# ARTICLE IX
## RETENTION AND PURSUIT OF CAUSES OF ACTION

9.01 <u>Preservation of Claims and Causes of Action</u>. The Debtors retain and reserve all causes of action. It is the intent of the Debtors that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtors' schedules or the Disclosure Statement. The Debtors shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any

preference or other avoidance action. Except as expressly provided in the Plan, the Confirmation Order shall not bar the Debtors by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting or defending any matter, avoidance action, or cause of action.

There were no payments made by Debtors during the 90-day period (or one-year period for insiders) prior to the filing of this Chapter 11 case that aggregated more than $6,425.00 to any individual or entity. The Debtors will continue their analysis of potential preferences and fraudulent conveyances, and specifically reserve the right to pursue such actions.

All creditors identified in Question 6 to Debtors' Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtors in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $6,425.00, may be the defendant of an avoidance action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtors may add to or amend the identified claims after the Confirmation Date and reserves their right to do so.

Each creditor and party in interest is advised to review closely the Plan, the Disclosure Statement, and the Debtors' filed Schedules and Statement of Financial Affairs to determine whether any cause of action or avoidance action may be pursued against it. Avoidance actions to recover preferences pursuant to Section 547 of the Bankruptcy Code may exist against every person who received a payment from the Debtors within 90 days prior to the Petition Date.

## ARTICLE X
## EFFECT OF CONFIRMATION, DISCHARGE AND INJUNCTION

10.01 <u>Vesting of Property</u>. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all the property of the Debtors' estate in the Debtor.

10.02 <u>Property Free and Clear</u>. Except as otherwise provided in the Plan, all Property shall be free and clear of all claims, liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all Property, unless such lien or encumbrance is specifically retained in the Plan

10.03 <u>Legal Binding Effect</u>. The provisions of this Plan shall bind all Claimants, whether or not they accept this Plan or whether or not their Claim is impaired.

10.04 <u>Effect on Third Parties</u>. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any Claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

10.05 <u>Release of Claims</u>. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all Claims against the Debtors or any of its assets or properties, including without limitation any Claim accruing after the Petition Date and prior to the Effective Date.

10.06 _Permanent Injunction_. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Claimants and persons who have held, hold or may hold Claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any of its owned entities on account of Claims against the Debtors, or on account of claims released pursuant to section 10.05 of the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or any Property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtors arising from a Claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any Claims that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of Administrative Claims incurred prior to the date of Confirmation shall be permanently enjoined from asserting any Claim against the Debtors or their retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such Claim or Interest is allowed under Section 502 of the Bankruptcy Code.

10.07 _Exculpation_. Except as otherwise provided in the Plan or Confirmation Order, the Debtor and the professionals for the Debtor shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

## ARTICLE XI
## GENERAL AND MISCELLANEOUS PROVISIONS

11.01 _Withdrawal of Plan_. At the option of the Debtors, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

11.02 _Retention of Claims_. Pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, the Debtors shall retain each and every claim, demand or cause of action whatsoever which the Debtors may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Bankruptcy Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Bankruptcy Code.

11.03 _Continued Reporting Requirements_. Pursuant to Fed. R. Bank. P. 2015, the Debtors are required to file monthly operating reports until the Plan is confirmed. After confirmation, the Debtors are required to file quarterly reports until the case is closed, dismissed, converted to

another chapter of the Bankruptcy Code, or a final decree is entered by the Court, pursuant to LBR 2015-2.

11.04 <u>Exemptions from Transfer Tax</u>. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any Property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Bankruptcy Code.

11.05 <u>Modification of the Plan</u>. The Debtors may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtors, with approval of the Court, and so long as they do not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability of any party to modify the Plan under § 1127 and applicable rules.

11.06 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

11.07 <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

11.08 <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

11.09 <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

11.10 <u>Continuing Jurisdiction of the Court</u>. In addition to the continued jurisdiction after the Confirmation Date that is provided for as a matter of law by the Bankruptcy Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a) To determine any and all objections to the allowance, extent, priority or nature of any Claims, the amount and proper classification of the Claim of any holder and the determination of such objections as may be filed to any Claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Bankruptcy Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f) To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(g) To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code;

(h) Except as otherwise provided in this Plan, to make any determinations and to issue any Final Orders to enforce, interpret or effectuate the Plan;

(i) To enter a Final Order concluding and terminating this case;

(j) To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtors pursuant to Section 12.04 of this Plan; and

(k) To determine such other matters as may be provided for in the Confirmation Order.

**ARTICLE XII**
CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN

12.01   Closing of the Case.  After the Effective Date, upon the payment of all outstanding administrative claims and the commencement of payments to priority creditors and secured Claimants, the Debtors will seek an Order closing the case through the filing of a final accounting and a motion for a final decree as required under Bankruptcy Rule 3022.  The Debtors shall continue to pay the U.S. Trustee quarterly fees until the Final Decree is entered.

12.02   Professional Fees after Confirmation.  In the period after the date of Confirmation, but before closing of the case, the Reorganized Debtors may continue to avail themselves to the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case.  With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtors, who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth hereinbelow.  In the Motion for Final Decree, the Reorganized Debtors shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, with respect to which no prior application for allowance thereof has been made to the Court.  At any hearing upon the

Reorganized Debtors' Motion for Final Decree, the Court shall consider and determine whether or not such payments shall be approved as reasonable.

      12.03   <u>Continued Execution of the Plan after Closing</u>.  After closing of the case, the Reorganized Debtors shall continue to employ professional real estate agents to market and sell their real property pursuant to the Plan.  Upon all payments having been received and distributed, the Reorganized Debtors must reopen the case and satisfy any additional requirements under the Bankruptcy Code to receive a discharge.

      12.04   <u>Professional Fees after Closing</u>.  After closing of the case, the Reorganized Debtors may continue to avail themselves to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Plan.  In the event such professional services are rendered, or expenses are incurred by any professional person therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtors, who shall promptly pay the same, subject to any objection being raised by the Reorganized Debtors.  Pursuant to Section 11.09(j) of this Plan, the Court will retain jurisdiction to review the reasonableness of each such payment in the event of such an objection or dispute.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

*/s/ Christopher T. Hughes*
Christopher T. Hughes


*/s/ Patricia J. Hughes*
Patricia J. Hughes


Respectfully Submitted,

*/s/ Gray Waldron*
TIMOTHY G. NIARHOS
GRAY WALDRON
REBECCA J. YIELDING
NIARHOS & WALDRON, PLC
1106 18th Avenue South
Nashville, Tennessee 37212
(615) 320-1101 | Phone
(615) 320-1102 | Fax
tim@niarhos.com; gray@niarhos.com
rebecca@niarhos.com
*Attorneys for Debtors*